AO 106 (Rev. 01/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 20mj167
4042 Walnut Crossing Dr. )
Groveport, OH 43125 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Southern_____ District of _____Ohio_____ *(identify the person or describe property to be searched and give its location):* Property to be searched, 4042 Walnut Crossing Dr., is a two-story, single family, residence, with tan siding, with white trim, green shudders, and the numbers "4042" posted outside near the front door; and the surrounding curtilage. The residence is located on the east-side of Walnut Crossing Dr., with the front door facing west.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

    See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

   ☑ evidence of a crime;

   ☑ contraband, fruits of crime, or other items illegally possessed;

   ☑ property designed for use, intended for use, or used in committing a crime;

   ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___1956/1957___ , and the application is based on these facts:

   ☑ Continued on the attached sheet.

   ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jason R. Burns, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3-6-20

_____
*Judge's signature*

City and state: Columbus, Ohio

Chelsey M. Vascura , U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**ITEMS TO BE SEIZED**

Based on the foregoing, I respectfully submit that there is probable cause to believe that the following items will be found at **7187 Lithopolis Rd., Groveport, OH** and **4042 Walnut Crossing Dr., Groveport, OH**.

1. Books, records, notes, ledgers, and other papers relating to the transportation, purchase, distribution, packaging, and sale of controlled substances, which may be maintained in either paper form or on computers, computer disks, CD-ROM disks, DVD disks, portable storage devices, or other related equipment;

2. Books, records, receipts, notes, ledgers, airline tickets, money orders, and other records related to the receipt, expenditure and concealment or other disposition of income, which may be maintained in either paper form or on computers, computer disks, CD-ROM disks, DVD disks, portable storage devices, or other related equipment, relating to the distribution of controlled substances;

3. Books, papers, and documents and information contained within cellular phones and electronic organizers reflecting names, addresses, telephone numbers, and other contact or identification information of participants in drug trafficking activities;

4. Cash, currency, currency counters, financial instruments, and records relating to controlled substances income and expenditure of proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in drug trafficking activities;

5. Pagers, cellular phones, electronic organizers, caller identification devices, answering machine devices, and other communication devices belonging to Robert TINSLEY and Andrea TINSLEY, and to search the contents of the listed devices at a later time;

6. Photographs, and videotape of participants in drug trafficking activities, and of property acquired from the sale of controlled substances or money laundering;

7. Bank and other financial institution records consisting of savings, loans, records of deposits, statements, letters of credit, money orders, cashier checks, passbooks, cancelled checks, certificates of deposit, lease agreements, customer account information, income and expense summaries, cash disbursement journals, financial statements, state and federal income tax returns, information related to the receipt and other disposition of income, and related financial information pertaining to the purchase, lease, sale or other disposition of real or personal property, including real estate, automobiles, jewelry, and furniture;

8. United States currency, precious metals, jewelry, and financial instruments, as well as books and records regarding the acquisition, use and disposition of such items of value;

9.  Safe deposit box lease agreements and safe deposit keys;

10. Rental/lease agreements relating to any properties utilized by Robert and Andrea TINSLEY;

11. Proof of residency, including but not limited to cancelled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents and keys; and

12. Any safes, vaults, or secured storage equipment that could secret any of the above listed items, and the contents therein.

## Affidavit for Search Warrant:

## I.
## INTRODUCTION

I, Jason R. Burns, being duly sworn, depose and state as follows: I am a Special Agent (S/A) of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed in this capacity since 2005. During the course of my employment, I have received specific training and have obtained experience in investigations of Federal currency violations including money laundering. By virtue of my experience and training, I am familiar with money laundering techniques utilized by individuals involved in illegal activities, such as narcotics trafficking. I know that it is common for narcotics traffickers to accumulate large sums of U.S. Currency that they seek to launder in order to avoid detection of their illegal activities, and attempt to freely spend the cash without drawing law enforcement scrutiny. Based upon my training, experience, investigative efforts, and information and insight given to me by other ATF Agents and Columbus Division of Police (CPD) Officers, I submit there is probable cause to believe that Robert and Andrea TINSLEY are involved in money laundering activities associated with the distribution of controlled substances. I believe there exists sufficient probable cause that contained within the below listed properties evidence of those activities exist.

## II.
## PURPOSE OF AFFIDAVIT

This affidavit is submitted for the limited purpose of establishing probable cause in support of an application of a warrant to search the properties located at **7187 Lithopolis Rd., Groveport, OH** and **4042 Walnut Crossing Dr., Groveport, OH**, and therefore contains only a summary of the relevant facts. I have not included each and every fact that I, or others, have learned during the course of this investigation. The information set forth in this affidavit is based on my own participation in the investigation, information I have received from other law enforcement officials, and from my and other Agent's analysis of documents and records relating to this investigation. As the case agent of this investigation, I am familiar with the investigative efforts of other Agents and CPD Officers who have worked on this investigation. Further, I am familiar with the evidence gathered through the issuance of search warrants, and information provided to myself and other agents by cooperating individuals and informants. I believe there exists sufficient probable cause that evidence of the following violations:

- Title 18 U.S.C. § 1956 (a)(1)(A)(I) – Laundering of monetary instruments with the intent to promote the carrying on of the specified unlawful activity;
- Title 18 U.S.C. § 1956 (a)(1)(B)(i) – Laundering of monetary instruments with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity;
- Title 18 U.S.C. § 1956 (h) – Conspiracy to promote the carrying on of the specified unlawful activity and to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity;
- Title 18 U.S.C. § 1957 – Engaging in monetary transactions in property derived from specified unlawful activity;
- Title 21 U.S.C. § 841(a) – Possess with Intent to Distribute a Controlled Substance; and

- Title 21 U.S.C. § 846 – Conspire to Possess with Intent to Distribute a Controlled Substance.

## III.
## ITEMS TO BE SEIZED

A list of the specific items to be seized from **7187 Lithopolis Rd., Groveport, OH** and **4042 Walnut Crossing Dr., Groveport, OH** is attached hereto as Attachment A, and Attachment A is incorporated herein by reference. Based on my training and experience, as detailed above, I believe that there is probable cause to believe that the items listed in Attachment A will be found at **7187 Lithopolis Rd., Groveport, OH** and **4042 Walnut Crossing Dr., Groveport, OH**, as more fully described in Attachments A.

## IV.
## PROBABLE CAUSE

1. On or about July 2, 2018, an ATF Confidential Informant (CI #1) met with S/A Burns in regards to an armed narcotics trafficker named Robert TINSLEY, aka "Bro," aka "Bub." S/A Burns is familiar with TINSLEY who was a prior ATF suspect in a previous ATF investigation. TINSLEY was distributing ounce amounts of cocaine and had used a Straw Purchaser to gain access to a firearm. At the time, TINSLEY had been convicted of Attempted Robbery (F-3) out of Huron County, Ohio, and prohibited from possessing firearms. The CI has provided reliable information that has been corroborated by S/A Burns.

2. The CI advised the CI has known TINSLEY for a long time and had purchased narcotics from TINSLEY in the past on several occasions, and that multiple associates of the CI also purchase their narcotics from TINSLEY. The CI advised that TINSLEY was known to sell quality narcotics, operating several "Trap Houses" on the west-side of Columbus. The CI stated TINSLEY kept several firearms at these locations to protect his drug business. The CI stated TINSLEY was recently released from prison, and was on parole and living at a halfway house. The CI advised TINSLEY was already operating several trap houses, selling heroin, and crack cocaine. The CI stated TINSLEY would have several people working at the trap houses, selling narcotics for him. The CI stated TINSLEY will provide a phone and supply the trap house with narcotics, and return to the house later to collect the money and/or resupply the house with narcotics.

3. The CI advised that TINSLEY provided a telephone number through social media, and that the CI was provided with a phone number sent through Facebook Messenger. S/A Burns is familiar with TINSLEY's Facebook account title "Robert Tinsley." The CI advised that this telephone number would be needed in order to purchase narcotics, and that the CI would call the number and be told by a member of the Drug Trafficking Organization (DTO) where to go to purchase the narcotics. The CI provided the following number **(614) 270-3876 (the TINSLEY phone)**. The CI advised that TINSLEY is currently using the following locations, "Trap Houses," to distribute narcotics: 715 Racine Ave., 39 N. Ogden Ave., and 962 Whitethorne Ave., Columbus, OH. Your affiant is familiar with these locations, which are all located on the west-side of Columbus in a violent area known as the "Hilltop." The

CI advised that a Male/White known as "J Rock" was selling at 715 Racine Ave. for TINSLEY.

4. On this same date, your affiant conducted surveillance on 715 Racine Ave., Columbus, OH, and observed a Male/White, short brown hair, approx. 25 – 30 years old, with several arm tattoos sitting outside the residence. At approx. 4:48 P.M., your affiant observed a tall, thin, Male/Black with light skin, arrive at 715 Racine Ave. in a tan in color Ford Mustang, bearing Ohio Tag: GEZ-1484, with black racing strips on the hood. Your affiant conducted a search on the license plate, and the Ford Mustang was registered to Andrea M. TINSLEY, with a listed address of 4042 Walnut Crossing Dr., Groveport, OH. Through Facebook, your affiant determined that Andrea TINSLEY was the wife of Robert TINSLEY and that they have several children together. At approx. 4:58 P.M., the Male/White and the Male/Black exited 715 Racine Ave., and walked to the Ford Mustang. The Male/Black entered the Ford Mustang and drove off, south down Racine Avenue. The Male/White returned to 715 Racine Ave. S/A Burns was unable to fully identify these individuals.

5. On this same date, your affiant conducted a criminal history check on TINSLEY. TINSLEY is further described as Male/Black, 6'2", 180 lbs., short black hair, brown eyes, DOB: 4/11/1982, FBI #: 926982MB6. TINSLEY had multiple arrests for Aggravated. Robbery, Carrying a Concealed Weapon, Having Weapons Under Disability, Possession of Drugs, Domestic Violence, and Assault. TINSLEY has the following convictions:

- Attempted Robbery (F-3), Huron County, Ohio, 2000;
- Assault (M-1), Franklin County, Ohio 2010;
- Possession of Drugs, Franklin County, Ohio 2011;
- Possession of Drugs, Franklin County, Ohio 2016.

TINSLEY is currently on parole, with a listed start date as 1/25/2018, and has a listed address with Alvis House (halfway house). TINSLEY is on parole for the 2016 Possession of Drugs conviction. TINSLEY has a valid Ohio Driver's License, # RU706780, issued on 2/7/2018, with a listed address of 635 Wilson Ave., Columbus, OH 43205.

6. Your affiant conducted a search on TINSLEY in ATF's E-trace system and recovered the following gun traces:

- Trace T20050157581, Recovered 7/23/2005 at 635 Wilson Ave., Possessor: Robert TINSLEY;
- Trace T20050180979, Recovered 8/13/2015 at 3295 Sullivant Ave., (Time to Crime: 0 days), Possessor: Robert TINSLEY.

7. On or about July 11, 2018, S/A's Burns and Teresa Petit met with the CI in regards to the purchase of heroin and/or crack cocaine from TINSLEY or a member of TINSLEY's DTO. The CI made a call to phone number (614) 270-3876 (the TINSLEY phone). The CI was instructed to come to an unrelated residence (Trap House #1) and come to the rear door. S/A Burns was present for this phone call. The CI advised that people are instructed to go to the back door of the residence in an effort to conceal the amount of foot traffic coming to the

location. S/A's Shane Messner and Burns drove the CI to this location, and the CI purchased an amount of heroin from a Male/White, later identified as Bryan BUHRTS, with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the rear door and purchased the narcotics from the Male/White. The CI advised that there were multiple individuals inside the location.

8.  On or about this same date, your affiant watched and listened to the narcotics transaction between the CI and the Male/White, later identified as BUHRTS. Your affiant observed a silver Chevy Malibu, Ohio Tag: HDT-6521 and a blue Chevy Impala, Ohio Tag: HDT-6522, both cars registered to Jonathan NOBLE, with a listed address of 2180 Margaret Ave., Columbus, OH. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI. Your affiant was able to identify NOBLE, dressed in a red T-shirt, standing in the kitchen near the table where BUHRTS was supplying narcotics.

9.  BUHRTS is further described as a Male/White, 5'7", 160 lbs., Brown Hair, Brown Eyes, DOB: 11/28/1991, with multiple tattoos to include two (2) birds and the word "OUTLAW" on his abdomen area, and a skull and crossbones on his throat, and a listed address of 2647 Eakin Rd., Columbus, OH 43204. BUHRTS is a multi-convicted felon, with convictions including Burglary (F-3), Theft (F-5), and Robbery (F-2). BUHRTS is currently under Indictment in Franklin County Case 18-CR-326, charged with multiple Burglary/Theft counts w/ Gun Specifications.

10. NOBLE is further described as a Male/White, 5'8", 145 lbs., Brown Hair, Blue Eyes, DOB: 4/13/1985, FBI #: 756830AC4. NOBLE is a multi-convicted felon, with convictions including Attempted Felonious Assault (F-3), Receiving Stolen Property (F-4), Theft (F-5), and Weapons Under Disability (F-3). The vehicles registered to NOBLE, had a listed address of 2180 Margret Ave., Columbus, OH (a residence purchased by Andrea TINSLEY on or about April 10, 2013 for $11,000).

11. On or about July 24, 2018, S/A's Burns and Adam Klontz met with an ATF CI in regards to the purchase of heroin and/or crack from a member of Robert TINSLEY's drug trafficking organization (DTO). The CI made a recorded call to phone number **(614) 270-3876 (the TINSLEY phone)**, and the CI was instructed to come to an unrelated residence (**Trap House #2**). S/A Klontz drove the CI to this location, and the CI purchased an amount of heroin and crack from a Male/White, later identified as Todd GALLAUGHER, with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the front door and purchased the narcotics from GALLAUGHER. The CI advised that the narcotics and scales were located on a table in the kitchen, and that GALLAUGHER had a black, semi-automatic pistol laying on the right side of the table. Your affiant watched and listened to the narcotics transaction between the CI and GALLAUGHER. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI. Your affiant field-tested the suspected crack, which tested positive for Cocaine.

12. A criminal history check on Todd GALLAUGHER (FBI #: 264897RA2) revealed that on or about March 23, 2005, GALLAUGHER was convicted in the Franklin County Court of Common Pleas, Columbus, Ohio in Case #: 04-CR-8385 for Possession of Drugs, a felony of the fifth degree (F-5).

13. On or about July 27, 2018, S/A's Burns and Adam Klontz met with an ATF CI in regards to the purchase of heroin and/or crack from a member of Robert TINSLEY's drug trafficking organization (DTO). The CI made a call to phone number **(614) 270-3876 (the TINSLEY phone)**, and the CI was instructed to come to an unrelated residence **(Trap House #3)**, and come to the rear door. S/A's Burns and Klontz were present for this phone call. S/A Klontz drove the CI to this location, and the CI purchased an amount of heroin and crack from GALLAUGHER with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the rear door and purchased the narcotics from GALLAUGHER. The CI advised that the narcotics and scales were located on a table in the kitchen. Your affiant watched and listened to the narcotics transaction between the CI and GALLAUGHER. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI. Your affiant field-tested the suspected crack, which tested positive for Cocaine.

14. On or about August 7, 2018, the CI made a call to phone number **(614) 270-3876 (the TINSLEY phone)**; GALLAUGER answered and instructed the CI to come to **Trap House #3**. S/A Burns was present for this phone call. S/A Klontz drove the CI to this location, and the CI purchased an amount of heroin and crack from GALLAUGHER with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the rear door and purchased the narcotics from GALLAUGHER. The CI advised that there was a black pistol laying out on the table, to the right of GALLAUGHER. Your affiant watched and listened to the narcotics transaction between the CI and GALLAUGHER. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI. Your affiant field-tested the suspected crack, which tested positive for Cocaine.

15. On this same date, ATF Task Force Officer (TFO) Brian Boesch drove past the front of **Trap House #3**, and observed a green pickup truck with Ohio Tag: HBW-5432, parked in front of the townhouse marked "4364." The green pickup truck is registered to a Ronald E. GALLAUGHER II.

16. On or about August 3, 2018, your affiant was contacted by the CI who advised that **Trap House #1** was still being used to traffic narcotics. The CI advised Jonathan NOBLE was recently selling narcotics from the residence.

17. On or about August 8, 2018, your affiant conducted surveillance at 2180 Margaret Ave., Columbus, OH. This address is the listed address on Jonathon NOBLE's Ohio Driver's License issued on 3/22/2017. Your affiant observed a black Dodge Charger, bearing Ohio Temp. Tag: G194731 parked in front of the residence.

18. On or about August 9, 2018, your affiant observed the black Dodge Charger parked in the rear of **Trap House #1**. The Charger was backed in, and your affiant was unable to verify the license plate on the rear of the vehicle. There was no license plate on the front of the vehicle. The Dodge Charger is consistent in make, model and color with the Dodge Charger your affiant observed at 2180 Margaret Ave. on 8/8/2018.

19. On or about August 10, 2018, your affiant observed the black Dodge Charger parked in the rear of **Trap House #1**. The Charger, bearing Ohio Temp. Tag G194731, registers to NOBLE at 2180 Margaret Ave., Columbus, OH.

20. The residence located at 2180 Margaret Ave. has a registered owner at the Franklin County's Auditor's office of Andrea TINSLEY, who purchased the house in 2013 for $11,000. Records indicate that Andrea TINSLEY additionally purchased the residence of 130 S. Warren Ave., Columbus, OH in 2015 for $13,000. Andrea TINSLEY has a listed mailing address of 4042 Walnut Crossing Dr. Groveport, OH. According to records filed on June 20, 2018 at the Franklin County recorder's office, a land contract is on file that Andrea TINSLEY is purchasing 4042 Walnut Crossing Dr., Groveport, OH from Gordon & Shareese Watkins for $135,000. Andrea TINSLEY is the wife of Robert TINSLEY. The details of that land contract in part state the following:

   - This contract will go into effect as soon as the full down payment is received of $27,000. The buyer (Andrea TINSLEY) has agreed to make two equal payments in July and August of 2018 of $13,500. During this period, the regular rental agreement and rent due is in effect until the full down payment is received. The terms and payments of this contract will begin September 1, 2018. The unpaid principal and accrued interest shall be payable in monthly installments of $3,596.66 beginning on September 1, 2018, and continuing until September 1, 2021 (the "Due Date"), at which time the remaining unpaid principal and interest shall be due in full.

   - Your affiant obtained Chase Bank records in the name of Andrea TINSLEY. An analysis of these records reflected payments made to Shareese Watkins. Payments from approx. 9/1/2017 to 12/2/2019 amounted to approx. $99,046 to Shareese Watkins, which appear to be consistent with the payment terms of the Walnut Crossing property.

   - The above listed payments are inconsistent with the available legitimate reported income of the TINSLEY's as set forth in Paragraph 30 of this affidavit.

   - Your affiant also researched Franklin County Clerk of Court records relating to any filings by the sellers of 4042 Walnut Crossing Drive Groveport, OH (Gordon & Shareese Watkins) for defaults relating to the land contract and found none.

21. On or about August 17, 2018, the CI made a call to phone number **(614) 270-3876 (the TINSLEY phone)**; GALLAUGER answered and instructed the CI to come to **Trap House #3**. S/A's Burns and Klontz were present for this phone call. S/A Klontz drove the CI to this location, and the CI purchased an amount of heroin from GALLAUGHER with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the rear door and purchased the narcotics from GALLAUGHER. Your affiant watched and listened to the narcotics transaction between the CI and GALLAUGHER. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI.

22. On this same date, TFO Boesch drove past the front of **Trap House #3**, and observed a green pickup truck with Ohio Tag: HBW-5432, parked in front of the residence. The green pickup truck is registered to a Ronald E. GALLAUGHER II.

23. On or about August 23, 2018, your affiant observed NOBLE's Dodge Charger parked in the rear of **Trap House #1**.

24. On this same date, the CI made a call to phone number **(614) 270-3876 (the TINSLEY phone)** and an unknown male answered and advised the CI to come **Trap House #1**. S/A's Burns and Klontz were present for this phone call. S/A Burns drove the CI to this location, and the CI purchased an amount of heroin from NOBLE with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the rear door, and purchased the narcotics from NOBLE. The CI advised that the CI exited the residence from the rear door, and returned to S/A Burns' vehicle.

25. On this same date, S/A Burns debriefed the CI following the deal. The CI advised the CI entered the residence at the rear door, and there were three (3) individuals inside the residence. The CI advised a Male/White was working the door and let him inside the residence. The CI advised NOBLE was sitting at the kitchen table distributing the narcotics. The CI stated a Male/Black was also inside the residence. The CI stated the Male/Black was tall, with tattoos completely covering his arms. The CI was shown a photograph of Robert TINSLEY, and the CI identified the Male/Black inside the residence as TINSLEY. Your affiant watched and listened to the narcotics transaction between the CI and NOBLE. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI.

26. On or about August 30, 2018, S/A Burns and TFO Jerry Orick met the CI, and the CI had arranged for the purchase of crack and heroin from **Trap House #1**. Your affiant drove the CI to this location, and the CI purchased an amount of heroin and crack from NOBLE with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the rear door and purchased the narcotics from NOBLE. The CI advised that the CI exited the residence from the rear door, and returned to your affiant's vehicle. The CI advised that NOBLE's black Dodge Charger was parked in the rear of the residence. Your affiant watched and listened to the narcotics transaction between the CI and NOBLE. The audio and video of the narcotics transaction was consistent

with the description of the transaction as described by the CI. Your affiant field-tested the suspected crack, which tested positive for Cocaine.

27. On or about September 5, 2018, ATF Agents and TFO's conducted a Federal search warrant at **Trap House #3**. Agents and TFO's recovered four (4) firearms, suspected Crack Cocaine, suspected Heroin, suspected marijuana, approx. $4,000.00 in U.S. Currency, and other drug paraphernalia. Among the individuals identified at the residence was Todd GALLAUGHER and Gary W. FROHNAUER. TFO Orick spoke with GALLAUGHER and advised him that he was not under arrest. TFO Orick asked GALLAUGHER where he was when the search warrant occurred. GALLAUGHER advised he was in the basement. TFO Orick advised GALLAUGHER that a loaded firearm was recovered in the basement. Your affiant spoke with FROHNAUER, who advised he was in the basement sleeping when the police arrived. FORHNAUER advised narcotics trafficking is going on at the residence but he was not here to purchase narcotics. FORHNAUER later advised your affiant he is a drug user.

28. Gary FROHNAUER is further described as a Male/White, 6'00", 175 lbs., Brown Hair, Blue Eyes, DOB: 5/24/1988, FBI: 79231AD2. FROHNAUER was convicted in Franklin County Case #: 07-CR-8642 of three (3) counts of Aggravated. Vehicular Assault, one (1) F-3 count, and two (2) F-4 counts.

29. On or about this same date, Apartment Management and Security arrived and advised that they had received several complaints about the drug trafficking and the drug use associated with the residence. An apartment security employee advised GALLAUGHER and his girlfriend, identified as Heather THOMPSON, stay there, and GALLAUGHER drives the green pickup truck parked in the front of the unit.

30. On or about September 7, 2018, according to the Franklin County Auditor's Office Andrea TINSLEY purchased a property located at 7187 Lithopolis Rd., Groveport, OH 43125 for a purchase price of $344,800.00. A search of the Franklin County Recorder's office reflected this property did not have a mortgage associated to its purchase. Your affiant obtained Chase Bank records relating to accounts controlled by Andrea TINSLEY. These accounts reflected payments for the purchase of 7187 Lithopolis Rd. An analysis of Andrea TINSLEY's bank accounts reflected the vast majority of the deposits into those accounts were made with cash. These accounts showed a total of known cash deposits of over $900,000 from 2015 to 2019. S/A Burns also obtained Robert and Andrea TINSLEY's State of Ohio tax returns and are summarized below:

    a.   **Robert TINSLEY**
          2014 - no tax return filed;
          2015 - no tax return filed;
          2016 - no tax return filed;
          2017 - no tax return filed;
          2018 – no tax return filed.

**b.  Andrea TINSLEY**

2014 - reported adjusted gross income of $13,708, filing status single, earned income credit of $546, and a low income credit of $88;

2015 - reported adjusted gross income of $14,906, filing status single, earned income credit of $555, and a low income credit of $88;

2016 - reported adjusted gross income of $35,049, filing status single, and an earned income credit $144;

2017 - reported adjusted gross income $15,711, filing status single, and an earned income credit $562;

2018 – reported adjusted gross income $13,215, filing status single, and an earned income credit $457.

Additionally according to Ohio Bureau of Motor Vehicle records on or about June 4, 2015, Andrea TINSLEY purchased a new 2015 Chevrolet truck for which she is currently making payments. Also on or about May 25, 2016, she purchased a new 2016 Chevrolet vehicle for which she is currently making payments. The above purchases by the TINSLEY's are not consistent with their legitimate income as reported for tax purposes.

31. On or about September 12, 2018, S/A's Burns and Klontz met the CI in regards to making a purchase of heroin and/or crack from a member of the TINSLEY DTO. The CI advised that the CI acquired a new phone number for the DTO, and the CI made a call to phone number **(614) 619-5136** in the presence of S/A Burns. A male answered and instructed the CI to come to an unrelated residence, **Trap House #4**. S/A's Burns and Klontz drove the CI to this location, and the CI purchased an amount of crack from BUHRTS with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI went to the rear of the residence and me with BUHRTS in the rear garage, and purchased the narcotics from BUHRTS. The CI advised that the CI left the residence and returned to S/A Klontz's vehicle. Your affiant watched and listened to the narcotics transaction between the CI and NOBLE. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI. Your affiant field-tested the suspected crack, which tested positive for Cocaine.

32. On or about September 14, 2018, the CI made a call to phone number **(614) 619-5136**. The CI was instructed to come to an unrelated residence, **Trap House #5**, and the CI advised that the voice on the phone was NOBLE. Your affiant was present for this phone call. S/A Klontz and your affiant drove the CI to **Trap House #5**, and the CI purchased an amount of heroin and crack from Gary FROHNAUER, who was at the residence with NOBLE. The CI paid for the narcotics with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the front door and purchased the narcotics from FROHNAUER and NOBLE. Your affiant watched and listened to the narcotics transaction between the CI and FROHNAUER. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI. Your affiant field-tested the suspected crack, which tested positive for Cocaine.

33. On or about September 21, 2018, the CI made a call to phone number **(614) 619-5136**. NOBLE answered the phone and instructed the CI to come to **Trap House #5**. Your affiant

was present for this phone call. S/A Klontz and your affiant drove the CI to this location, and the CI purchased an amount of heroin from NOBLE with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the front door and purchased the narcotics from NOBLE. Your affiant watched and listened to the narcotics transaction between the CI and NOBLE. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI.

34. On or about September 29, 2018, S/A Burns received Wireless Subscriber Information from AT&T Subpoena Compliance for phone numbers **(614) 270-3876** and **(614) 619-5136**. The service start date for **(614) 270-3876** was 6/11/2018 with Locus Communications. No name was provided on the account. The service start date for **(614) 619-5136** was 9/06/2018 with Locus Communications (The day after a Federal search warrant was conducted at **Trap House #3**). No name was provided on the account.

35. On or about October 5, 2018, S/A's Burns and Klontz met the CI, and the CI had arranged for the purchase of crack and/or heroin from **Trap House #5**. S/A Klontz and your affiant drove the CI to this location, and the CI purchased an amount of heroin from a Female/White, later identified as Timi SPAFFORD, with pre-recorded Government funds. This transaction was video and audio recorded.

36. On this same date, your affiant debriefed the CI following the deal. The CI advised the CI entered the residence at the front door, and there were two (2) White/Females inside the residence. The CI advised the younger female, identified as Timi SPAFFORD, advised they were waiting to be resupplied with narcotics. The CI stated the older female, identified as Terri EBERT, advised she was going to call "Bub." The CI is aware that individuals have referred to TINSLEY as "Bub." in the past. The CI stated the CI purchased approximately a gram of heroin from SPAFFORD, and SPAFFORD charged the CI $45.00 for the heroin. The CI paid for the heroin with pre-recorded Government funds. The CI exited the residence from the front door and returned to the ATF vehicle.

37. On this same date, your affiant watched and listened to the narcotics transaction that occurred at **Trap House #5**. Your affiant observed the CI enter the residence from the front door. Your affiant was able to recognize a black Ford Focus parked in front of the residence. Your affiant was able to recognize SPAFFORD wearing a red T-Shirt. EBERT states "Get a hold of Bub." SPAFFORD replies, "Mom, I wrote him, he's at work. Not much I can do." SPAFFORD weighs out the suspected heroin and sells it to the CI.

38. Timi SPAFFORD is further described as a Female/White, 5'3", 140 lbs., long brown hair, brown eyes, DOB: 7/29/1994, FBI #: 418336XD0. A Computerized Criminal History (CCH) search determined that SPAFFORD was arrested for Domestic Violence on 12/19/2013. SPAFFORD was convicted of a lesser offense, Disorderly Conduct, Disposition Date of 1/21/2014.

39. Terri Lynn EBERT is further described as a Female/White, 5'2", 120 lbs., long brown hair, brown eyes, DOB: 1/19/1968, FBI #: 529617CD4. A CCH search determined that EBERT

has multiple arrests for narcotics related offenses. On 8/17/2018, EBERT was arrested for Drug Possession, and is currently under Indictment in Franklin County for Illegal Conveyance into Jail, Tampering with Evidence, and Possession of Drugs (F-5).

40. On or about October 9, 2018, your affiant conducted surveillance at **Trap House #5**. Your affiant observed a black Ford Focus, bearing Ohio Tag: HOT-5641, registered to Timi SPAFFORD. Your affiant observed NOBLE's black Dodge Charger parked near the residence. Your affiant observed NOBLE outside talking to a Female/White, driving a gray Pontiac Grand Am, bearing Ohio Temporary Tag: G536981. Your affiant conducted a search in OHLEG on the Temporary Tag, and determined the vehicle was registered to Ashley N. TRIPLETT. Your affiant is familiar with Ms. TRIPLETT, who is the girlfriend of FROHNAUER.

41. On or about October 10, 2018, S/A's Burns and Petit met the CI, and the CI had arranged for the purchase of crack and/or heroin from **Trap House #5**. Your affiant drove the CI to this location, and the CI purchased an amount of crack from a Male/White, later identified as Thomas DELANEY, aka "Tommy D," with pre-recorded Government funds. This transaction was video and audio recorded. Your affiant field-tested the suspected crack, which tested positive for Cocaine.

42. On this same date, your affiant debriefed the CI following the deal. The CI advised he/she entered the residence at the front door, and there were multiple individuals inside the residence. The CI advised SPAFFORD and EBERT were among the individuals inside the residence. The CI advised another White/Male was sitting at the kitchen table. The CI stated the CI purchased the crack from DELANEY. The CI paid DELANEY for the crack with pre-recorded Government funds. The CI then exited the residence from the front door and returned to the ATF vehicle.

43. On this same date, your affiant watched and listened to the narcotics transaction that occurred in **Trap House #5**. Your affiant observed the CI enter the residence from the front door. Your affiant was able to recognize DELANEY wearing a tan colored T-Shirt. DELANEY provide the CI with the suspected crack, and the CI paid DELANEY for the product.

44. Thomas W. DELANEY, aka "Tommy D," is further identified as a Male/White, 5'10", 180 lbs., short brown hair, blue eyes, DOB: 3/3/1981, FBI #: 629554MB9. A CCH search determined that DELANEY has multiple arrests for possession and/or trafficking in drugs, including Cocaine. DELANEY was convicted in Union County Court of Common Pleas, Case #: 06-CR-26, of Trafficking in Drugs.

45. On or about October 18, 2018, your affiant received and reviewed CPD Preliminary Investigation Report: 180595754-001, regarding the arrest of Jacob BROFFORD and Thomas W. DELANY on 7/18/2018. DELANEY and BROFFORD were arrested for Possession of Cocaine and/or Crack Cocaine at 563 S. Hague Ave., Columbus, OH.

46. On or about October 24, 2018, S/A's Burns and Petit met the CI, and the CI had arranged for the purchase of crack and/or heroin from a member of the DTO. The CI was instructed to an

unrelated residence on the west-side of Columbus, **Trap House #6**. Your affiant drove the CI to this location, and the CI purchased an amount of crack from a Male/White, later identified as Steven NOTT, with pre-recorded Government funds. This transaction was video and audio recorded. Your affiant field-tested the suspected crack, which tested positive for Cocaine.

47. On this same date, your affiant debriefed the CI following the deal. The CI advised the CI entered the residence at the rear door, and there were multiple individuals inside the residence. The CI advised there was a Male/White with blonde hair, later identified as Steven M. NOTT, distributing narcotics from a table. The CI advised that NOTT had been at **Trap House #5** with NOBLE. The CI purchased the heroin and crack from the NOTT. The CI paid NOTT for the heroin and crack with pre-recorded Government funds. The CI advised the CI exited the residence from the rear door and returned to the ATF vehicle.

48. On this same date, your affiant watched and listened to the narcotics transaction that occurred in **Trap House #6**. Your affiant observed several individuals inside the residence, approx. six (6). Your affiant observed the Male/White wearing a black hat, and was able to recognize him as Steven NOTT, a known associate of NOBLE. NOTT provided the CI with the suspected heroin and crack, and the CI paid NOTT for the product.

49. Steven Michael NOTT is further identified as a Male/White, 6'0", 185 lbs., short blond hair, blue eyes, DOB: 12/15/1978, FBI #: 349273JB6. NOTT has several tattoos, including a "KF – Konvicted Family" tattoo. A CCH search determined NOTT has multiple arrests (approx. 13) for Domestic Violence, Assault, Possession of Drugs (Heroin), Felonious Assault, and Tampering with Evidence. NOTT was convicted in Champaign County Court of Common Pleas, Case #: 09-31, of Aggravated. Possession of Drugs (F-5) and Illegal Conveyance of Prohibited Items onto Grounds of Detention Facility (F-3).

50. On or about October 31, 2018, your affiant had contact with an ATF CI (CI #2) in regards to TINSLEY's DTO. CI #2 has provided reliable information that has been corroborated by S/A Burns in the past. CI #2 advised the CI knows TINSLEY as a past associate. CI #2 advised TINSLEY sold ounce levels of Cocaine. CI #2 advised he knew TINSLEY by the street name of "Bro." CI #2 advised that TINSLEY's cell phone number is (614) 432-5005.

51. On or about November 7, 2018, CI had arranged for the purchase of crack and/or heroin from a member of the DTO. The CI was instructed to an unrelated residence on the west-side of Columbus, **Trap House #7**. Your affiant was present for this phone call. S/A's Burns and Messner drove the CI to this location, and the CI purchased an amount of crack and heroin from NOTT with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the rear door and purchased the narcotics from NOTT. Your affiant watched and listened to the narcotics transaction between the CI and NOTT. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI. Your affiant field-tested the suspected crack, which tested positive for Cocaine.

52. On or about November 8, 2018, at approx. 2:00 PM, your affiant conducted surveillance at **Trap House #7**, which is currently being used by the TINSLEY DTO to distribute narcotics. Your affiant observed the following suspect vehicles parked at **Trap House #7**:

 - A black Chevy Avalanche, Ohio Tag: HGU-7235 (parked in the rear); and
 - A tan Ford Mustang, Ohio Tag: GEZ-1484 (parked in front of apartment building).

The Chevy Avalanche is registered to Bobbie Jo Christian, with a listed address of 3513 Rivercrest Dr., Columbus, OH 43223. The Ford Mustang is registered to Andrea TINSLEY, with a listed address of 4042 Walnut Crossing Dr., Groveport, OH 43125.

53. On or about this same date, at approx. 2:11 PM, S/A Burns observed an unknown individual exit the front door of building, and enter the Ford Mustang and drive away, travelling south Your affiant lost contact with the vehicle in the area of Hague Ave., Columbus, OH.

54. On or about November 9, 2018, your affiant conducted surveillance at **Trap House #7**. At approx. 4:28 PM, your affiant observed an unknown Male/White walk to the rear of **Trap House #7**, knock on the rear sliding-glass door, and enter the apartment. This manner of entry is consistent with narcotics purchasers seeking to purchase narcotics at locations controlled by the TINSLEY DTO. Your affiant observed NOBLE's black Dodge Charger parked in the rear of **Trap House #7**.

55. On or about November 19, 2018, S/A's Burns and Klontz met the CI in regards to purchasing heroin and/or crack from a member of the TINSLEY DTO. The CI had a new phone number and provided it to S/A Burns. Your affiant knows that DTO's will often change phone numbers and use inexpensive cell phones with prepaid minutes in order to avoid detection by law enforcement. These inexpensive phones, known as "Burner Phones" can be put in fictitious names to also avoid detection by law enforcement. The CI made a call to phone number **(614) 927-9813**, and the CI was instructed to come to **Trap House #5**. S/A Burns was present for this phone call. S/A's Klontz and Burns drove the CI to this location, and the CI purchased an amount of heroin and crack from NOTT with pre-recorded Government funds. Your affiant field-tested the suspected crack, which tested positive for Cocaine.

56. On or about this same date, your affiant debriefed the CI following the deal. The CI advised the CI entered the residence at the front door, and advised EBERT and NOTT were present in the residence. The CI purchased the crack and heroin from NOTT. The CI paid NOTT for the crack and heroin with pre-recorded Government funds. The CI advised NOTT was seated at a desk, and the CI observed a pistol on the far, left-hand side of the desk. The CI advised NOTT removed another firearm from a drawer during the transaction. The CI exited the residence from the front door and returned to the ATF vehicle.

57. On or about this same date, your affiant watched and listened to the narcotics transaction that occurred at **Trap House #5**. Your affiant observed the CI enter the residence at the front door. Your affiant observed an unknown Male/White suspected of purchasing narcotics from NOTT. Your affiant observed NOTT seated at a desk and distributing narcotics. NOTT received several phone calls, advising the callers to "come on." Based on your affiant's

experience, NOTT was instructing the callers to come to the "trap house" to purchase narcotics. NOTT packages the product and provides it to the CI. While packaging suspected narcotics, NOTT describes a firearm present on the desk as being a "Taurus." NOTT also retrieves a suspected firearm from a drawer, and refers to it as a "Mossberg." Your affiant is familiar with the names Taurus and Mossberg, which are firearms manufactures.

58. On or about November 29, 2018, your affiant located suspected **Trap House #8**, in Columbus, OH. Your affiant observed NOBLE's Dodge Charger parked in the rear of the residence. Your affiant observed a Silver Honda, bearing Ohio Tag: HNK-6334, park next to the Dodge Charger. Your affiant observed a Female/White exit the vehicle and start walking to the rear door.

59. On or about this same date, your affiant conducted an OHLEG search on the Honda, Ohio Tag: HNK-6334. The vehicle was registered to Samantha L. MARSH, with a listed address of 2027 Sawbury Blvd., Columbus, OH 43235. Your affiant conducted a search of Samantha Marsh in Facebook and located a "Samantha Marsh" account located in Columbus, OH. Photographs on Facebook matched Marsh's Ohio Driver's license photograph on the OHLEG Vehicle Registration. Marsh's Facebook friends included DELANEY.

60. On or about December 10, 2018, the CI contacted your affiant in regards to a new "trap house" being used by the DTO. Your affiant proceeded to **Trap House #9**. Your affiant located NOBLE's Dodge Charger parked in the rear of the residence.

61. On or about December 12, 2018, the CI had arranged for the purchase of crack and/or heroin from a member of the DTO. The CI was instructed to **Trap House #9**. S/A's Burns and Petit drove the CI to this location, and the CI purchased an amount of crack from NOBLE with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the rear door and purchased the narcotics from NOBLE. Your affiant watched and listened to the narcotics transaction between the CI and NOBLE. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI. Your affiant field-tested the suspected crack, which tested positive for Cocaine.

62. On or about December 20, 2018, your affiant conducted surveillance on **Trap House #9**, and observed NOBLE's Dodge Charger parked in the rear of this location.

63. On this same date, your affiant met with the CI, and the CI made a controlled call to NOBLE. NOBLE stated that they were still at **Trap House #9**.

64. On or about December 22, 2018, the CI contacted your affiant and advised the DTO was back at **Trap House #1** distributing heroin and crack cocaine.

65. On or about December 26, 2018, your affiant conducted surveillance at **Trap House #5**. Your affiant observed the black Chevy Avalanche, bearing Ohio Tag: HGU-7235, parked in the rear of **Trap House #1**. Your affiant has identified this vehicle being used by NOTT.

66. On or about December 28, 2018, at approx. 11:20 AM, ATF Agents and TFO's conducted a Federal search warrant at **Trap House #1**. Agents and TFO's removed the following individuals:

   - Steven NOTT (DOB: 12/15/1978);
   - Zachary SCOTT (DOB: 10/04/1983);
   - Raena BAISDEN (DOB: 03/21/1995); and
   - Robert RUZICKA (DOB: 0131/1981).

67. On this same date, ATF Agents and TFO's cleared and secured the residence, and your affiant took overall photographs of the residence, prior to searching. During the course of the search warrant, Agents and TFO's recovered the following items:

   - A loaded Taurus, 9 mm Pistol, SN: TKO91567;
   - A loaded HiPoint, 9 mm Rifle, SN: F97531;
   - A loaded Smith & Wesson, .357 Revolver, SN: ABJ5498;
   - An extra Taurus, 9 mm Magazine, loaded with 11 rounds of ammunition;
   - Approx. 44 rounds of other assorted ammunition;
   - Approx. 9 grams total of suspected Heroin (Black-tar);
   - Approx. 4 grams total of suspected Crack inside black pouch, Kitchen;
   - Approx. 1 gram total of suspected Heroin, 2nd Floor N/E Bedroom;
   - U.S. Currency, $2,210.00 recovered inside black pouch on Kitchen table;
   - U.S. Currency, $2,438.00 recovered in the 2nd Floor Closet (NOTT's wallet);
   - U.S. Currency, $2,040.00 recovered in the 2nd Floor Storage Room;
   - Two (2) LG Flip Phones recovered on the Kitchen table; and
   - One (1) LG Flip Phone recovered in the 1st Floor West Room.

68. On this same date, your affiant and TFO Orick spoke with Steven NOTT, who advised he was just at the house hanging out. NOTT advised he uses Heroin. NOTT stated that he drives the Chevy Avalanche. NOTT stated he was upstairs when the police made entry.

69. On this same date, at approx. 11:00 AM, S/A Gebhart conducted surveillance at 2180 Margaret Ave., Columbus, OH, and observed NOBLE's black Dodge Charger parked in front of the residence.

70. On this same date, at approx. 1:40 PM, ATF Agents and TFO's conducted a Federal search warrant at 2180 Margaret Ave., Columbus, OH, the home residence of NOBLE. Agents and TFO's removed the following individuals:

   - Jonathan E. NOBLE (DOB: 04/13/1985);
   - Ashley R. HOSKINS (DOB: 03/21/1986 );
   - Timothy E. FISHER (DOB: 06/28/1962); and
   - Three (3) minor children.

71. On this same date, your affiant spoke with NOBLE and advised that Agents had a search warrant for the house. Your affiant asked NOBLE about any dangerous items, such as

firearms or drugs, located in the house. NOBLE advised there were firearms upstairs in the Master Bedroom, and that there were no drugs in the house. During the course of the search warrant, Agents and TFO's recovered the following items:

- Firearms (20) and Ammunition;
- U.S. Currency, $50,065 recovered in the Master Bedroom Safe;
- U.S. Currency, $907 recovered in the Master Bedroom (NOBLE's wallet);
- Miscellaneous Documents in the name of NOBLE;
- Approx. eight (8) items of Jewelry; and
- One (1) Samsung Galaxy S9 Smart Phone (NOBLE's).

Agents and TFO's recovered twenty (20) firearms and numerous rounds of ammunition (approx. 1600) inside the residence. NOBLE is a convicted felon, and the firearms and ammunition were seized by ATF in violation of Title 18 USC 922(g)(1) - Felon in possession of firearms and/or ammunition; and ATF Forfeiture Authority, Title 18 USC Section 924(d)(1).

72. On this same date, S/A Burns spoke with NOBLE and asked if NOBLE would consent to search his black Dodge Charger, Ohio Tag: HOC-7033. NOBLE agreed and your affiant read ATF Form 3220.11 – Consent to Search to NOBLE, who signed and dated the form. Your affiant photographed two (2) digital scales and one (1) LG Flip Phone in the trunk of the vehicle. No items were taken from the vehicle.

73. During the course of this investigation, NOBLE's State of Ohio tax returns were obtained and are summarized below.

   a **Jonathan NOBLE:**
   2014 - no tax return filed;
   2015 - no tax return filed;
   2016 - no tax return filed;
   2017 - no tax return filed.

NOBLE's $50,972.00 cash savings located at his residence during the search warrant is not consistent with legitimate earned income reported by NOBLE for tax purposes. It is however consistent with proceeds obtained from his narcotics activity.

74. On or about January 22, 2019, S/A Burns received information regarding Robert TINSLEY from CPD Officers. Officers advised that TINSLEY, aka "Bro," was observed driving a gray Chevy Silverado, bearing Ohio Tag: GNQ-4984. S/A Burns conducted a search on Ohio Tag: GNQ-4984 in OHLEG. The Silverado truck was registered to Andrea TINSLEY, with a listed address of 4042 Walnut Crossing Dr., Groveport, OH.

75. On or about January 23, 2019, your affiant and ATF Task Force Officer (TFO) Jerry Orick interviewed a Confidential Source (CS) in regards to Robert TINSLEY's Drug Trafficking Organization (DTO). The CS advised that during approximately August 2017, while Robert TINSLEY was in prison, Andrea TINSLEY was supplying narcotics to different "Trap

Houses" on the west-side of Columbus, OH. The CS advised that Andrea TINSLEY was "cooking" the crack cocaine and supplying crack and heroin. The CS advised the Trap Houses were on Catherine St., Midland Ave., and Hall Ave., in Columbus, OH.

76. On this same date, the CS advised that an individual named "Reggie" LNU, later identified as Ronald E. GALLAUGHER II, would bring the drugs to the trap houses, and pick up the money. The CS advised that Reggie LNU was an older Male/White and lived with the TINSLEY's. The CS stated that Reggie LNU lived in a barn or a shed on the TINSLEY's property. The CS advised that Reggie LNU drove a green pickup truck, and was possibly related to Todd GALLAUGER. The CS advised that Reggie LNU would supply approx. 2 – 3 ounces of narcotics a day, depending on how busy it was at the trap house.

77. One this same date, your affiant asked the CS about individuals selling at the "trap" locations. The CS advised that several individuals sold out the trap houses, and that they would work 24-hour shifts. The CS advised that Bill DAVIS, Phil LAWSON, Todd GALLAUGER, and Jon NOBLE worked at the trap houses, selling narcotics.

78. On or about March 5, 2019, your affiant met with the CI in regards to the DTO involving Robert TINSLEY. The CI identified Ronald E. GALLAUGHER II, aka "Reggie," from an Ohio Driver's License photograph.

79. During the course of the investigation, your affiant learned that an individual known as "Reggie" was used to transport narcotics from Andrea and Robert TINSLEY's to "Trap Houses" used to sell narcotics.

80. Ronald E. GALLAUGHER II, aka "Reggie" GALLAUGHER, is further described as a Male/White, 5'9", 170 lbs, Brown Hair, Brown Eyes, DOB: 7/2/1969, FBI #: 249994RA1. GALLAUGHER has multiple arrests for Possession of Drugs, and has the following Franklin County felony convictions:

- Case #: 06-CR-9644, Possession of Drugs, F-5; and
- Case #: 13-CR-1642, Possession of Drugs, F-5.

GALLAUGHER is the registered owner of a dark green Chevy Colorado pick-up truck, bearing Ohio Tag: HBW-5432. Your affiant is familiar with this vehicle, which was observed at multiple known trap houses, and being used by Todd GALLAUGHER.

81. On or about March 19, 2019, S/A Burns and TFO Orick interviewed a Cooperating Defendant (CD #1) in regards to the TINSLEY DTO. CD #1 stated in December 2015 he/she had been out of prison for approx. 6 – 7 months, and met with Phillip LAWSON. CD #1 stated LAWSON would "plug" the CD into a source for narcotics for distribution. CD #1 stated that LAWSON took the CD to a residence on Burgess Ave. (west side of Columbus – "Hilltop"). CD #1 met Robert TINSLEY who was supplying LAWSON with crack cocaine and heroin. CD #1 advised TINSLEY during this time "caught a case" and was sent to prison. CD #1 stated LAWSON continued to sell narcotics supplied by Andrea TINSLEY, aka "Sis" (Your affiant reviewed Franklin County Case #: 16-CR-2737, where TINSLEY

was convicted of Possession of Drugs, F-3; and was sentenced to 18 months in Ohio DRC on or about **1/30/2017**).

82. On this same date, CD #1 stated later, after TINSLEY'S incarceration, LAWSON went to jail. CD #1 stated at this time he/she got a phone from LAWSON, and hooked up with Andrea TINSLEY (Your affiant reviewed Franklin County Case #: 17-CR-6182, where LAWSON was convicted of Felonious Assault and Firearms related charges, and sentenced to Ohio ODRC on or about 1/03/2019. LAWSON was credited with 425 days of jail time credit, and was initially arrested on or about **11/04/2017**). CD #1 advised that he/she obtained "the phone" which was a little black flip phone, which was utilized by customers requesting narcotics from the DTO. CD #1 stated he/she started working at the "trap houses," selling crack and heroin three (3) days a week. CD #1 stated other people would work the other days, to include Todd GALLAUGHER.

83. On this same date, CD #1 advised at first while working for the TINSLEY's his /her location would sell approx. 1 to 3 ounces of crack cocaine, and 1 to 3 ounces of heroin per day. The CD stated as time went on it jumped to 5 ounces or more per day of each (crack cocaine and heroin).

84. On this same date, CD #1 stated Robert and Andrea TINSLEY used a driver named "Reggie." CD #1 stated that Reggie would drive the TINSLEY's Ford Mustang or drive a green pickup truck. Your affiant showed the CD a photograph of Ronald E. GALLAUGHER II (DOB: 7/02/1969), and the CD identified the photograph as "Reggie." CD #1 stated Reggie would deliver the narcotics to the trap houses, and leave with the money to return to the TINSLEY's. CD #1 advised Andrea TINSLEY was running the operation while Robert TINSLEY was in prison.

85. On this same date, CD #1 stated he/she was removed for a time from the operation, and that Andrea and Robert TINSLEY brought in Todd GALLAUGHER. The CD stated narcotics and/or money started coming up short while Todd GALLAUGHER was working, at which point he/she was brought back in to sell the narcotics for the TINSLEY's.

86. One this same date, your affiant asked the CD #1 about known "Trap Houses" utilized by the TINSLEY DTO, your affiant provided the CD with photographs of the locations.

- **715 Racine Ave.** CD #1 advised Todd GREEN, aka, "Drew" GREEN stayed at this location and the GREEN would sell narcotics with the CD and Todd GALLAUGHER. The CD confirmed that GREEN would drive a maroon SUV with a white door.

- **962 Whitethorne Ave.** CD #1 advised that another group of people that the CD did not know lived at this location, and only Todd GALLAUGHER sold from this location.

- **39 N. Ogden Ave.** CD #1 advised that this location was one of Todd GALLAUGHER's spots, and that GREEN and GREEN's girlfriend April LNU stayed at this location.

- **Trap House #1:** CD #1 advised that this was the CD's location and that narcotics trafficking started in March 2018. The CD identified Bryan BUHRTS as someone who worked for the CD. The CD stated BUHRTS is currently in prison.

- **Trap House #2:** CD #1 advised that this location was used as early as 2017 and it was used by Todd GALLAUGHER.

- **Trap House #3:** CD #1 advised this location was Amy GENTILE's apartment and Todd GALLAUGER used this location to sell narcotics. The CD advised that GREEN was trying to get to the apartment to get his firearms after the police left (ATF Search Warrant 9/5/2018).

- **Trap House #4:** CD #1 advised this location was used by the CD, and that William MINNICK, aka "Bill Bill" was living at this location.

- **Trap House #5:** CD #1 advised that this location was used by the CD to sell narcotics. The CD stated that TINSELY's friends lived at the trailer. The CD identified Terri L. EBERT, aka "Mama T," and Timi SPAFFORD as the individuals staying at the trailer. The CD stated that Gary FROHNAUER worked there for the CD. The CD advised that FROHNAUER and his girlfriend Ashley TRIPLETT sold drugs for Todd GALLAUGHER too. The CD stated that Thomas DELANEY, aka "Tommy D" worked for the CD at the trailer.

- **Trap House #6:** CD #1 advised that Chris LNU and Edna LNU lived at this location.

- **Trap House #7:** CD #1 stated that Megan LNU lived at this location. The CD stated that Megan LNU was tall and skinny.

- **Trap House #8:** CD #1 stated that Tyler LNU and Lisa LNU lived at this trailer.

- **Trap House #9:** CD #1 stated that this location was empty and used for a short time.

87. On this same date, your affiant asked CD #1 about Robert and Andrea TINSLEY's role in the DTO. CD #1 stated Andrea and Robert TINSLEY have a source for kilograms of narcotics. CD #1 stated both would "cook" the narcotics. CD #1 stated that he/she was present with Robert TINSLEY on one occasion where TINSLEY received multiple kilograms of narcotics from a source in north Columbus. CD #1 believes the TINSLEY's

store narcotics in a house where nobody lives. CD #1 stated that the TINSLEY's have a high-end security system at their residence. CD #1 stated Robert TINSLEY has always used Ronald GALLAUGER, aka "Reggie," to drive the narcotics to trap houses, and transport the money back to them. CD #1 stated Robert TINSLEY would put the phone number for purchasing his narcotics on Facebook Messenger. CD #1 stated that Robert TINSLEY's street name is "Bro." CD #1 stated that the money taken in from selling narcotics was taken back to the TINSLEY's residence, and that Andrea TINSLEY added up the money every night to make sure that it was right.

88. On this same date, CD #1 stated he/she has seen TINSLEY with an AR-15 rifle. CD #1 advised TINSLEY would shoot at Vance's on Alum Creek, renting several guns to shoot. CD #1 stated that he/she would take in firearms as trade for narcotics.

89. On this same date, CD #1 advised Robert TINSLEY currently has Shawn FORSYTHE (FBI: 242361LB7) selling narcotics for the TINSLEY DTO. The CD did not know the current location.

90. Based on information received from CD #1, ATF TFO Orick recovered Franklin County Jail calls previously made by Robert TINSLEY, **1/31/2017 to 2/01/2017**. TFO Orick is familiar with TINSLEY and others referenced in the jail calls, to include Phil LAWSON and Jonathan NOBLE. TFO Orick provided the following synopses of TINSLEY's calls:

**RT** = Robert TINSLEY
**AT** = Andrea TINSLEY
**PT** = Phil LAWSON

| Date | Number Called | Time | Name | Notes |
|------|------|------|------|-------|
| 1/31/17 | 614-966-0275 | 1654 | **Andrea Tinsley** | RT-How's erything going? AT-Erything's going smooth. Hooking up the flood lights right now. RT-Lil Johnny called you? AT-Yeah…earlier. We talked. I got a text and Nike is in jail. RT-I know I seen him. AT-Frank said you got a pair of shoes over at Nike's house and he's going to pick them up. He's on the way to do that now. RT-OK. AT-I talked to Lindsey. She was telling me about the dog thing. The web site and all that. RT-Alright. Cool. RT-Has **Phil** called you? AT-No. He sent $208.00 to put on your books. **RT-Yeah, when you check Johnny out you gotta add up whatchamacallit and see what dude gave Johnny that morning. Know what I mean? AT-Yeah. I got you.** RT-Make sure he takes care of them puppies. AT-Right. RT-Did I call Herb and give him my new number? AT-I don't know. RT-If I didn't, call him from it and give him the new number. AT-Ok. AT-I'm at the bank. *Andrea can be heard in background accessing an ATM.* It's gonna be alright...know what's crazy? The whole joy in my entire day is waiting for you to come home at night... RT-My visit days are Tuesday and Saturday. AT-Ok. RT-I can't stand it when motherfukcers want to watch the news in jail...for what? AT-I put enough money on the card so you can call me all the time. RT-That's smart. AT-I made sure I paid your credit card statement. I want to make sure I get your reinstatement fee paid down. **RT-I forgot to call Will's dad with the new number. AT-He has my number. Just in case. RT-Give him another one. AT-Ok. Alright.** RT-I need to have **Todd** or **Reggie** take my car up there and get my motor and transmission fixed. AT-**Todd** would be the man to do that right. He sat down and talked to me and said you were ok with him staying out here while you were gone. They're trying to do whatever it takes...y'know? RT-Yep. AT-I texted Lindsey and let her know I would be there Friday to get them. She said she would never keep the kids from me. RT-Ok. That's real good that she ain't gonna keep the boys from you. AT-I feel like this is a bad dream. RT-Why? |
| 1/31/2017 | 614-966-0275 | 1759 | **Andrea Tinsley** | AT-I love you. RT-I love you. I'll see you when you get in here for the visit. AT-Alright. Bye. |

| 1/31/2017 | 614-966-0275 | 2051 | Andrea Tinsley | RT-What you doing? AT-Stressing. RT-Why? AT-Did you know Phil is moving out today? RT-Yeah. AT-I talked to Johnny and Phil's tryna get his own team and work out of the house.  RT-I told him he can't do that.  Did you call him?  AT-He ain't called me or nothing.  Reggie heard him talking to his homeboy.  RT-Who Noble?  AT-Yep.  Johnny told me.  He said as soon as he gets to work he's gonna run with the phone and do his own thing.  RT-Cut him off.  AT-Ok.  I'm gonna go pick up the dog.  I'm at nanna's now.  **I'm not tryna stress you out.  Big Rome called and wanted to know if Johnny could go play poker with him.  RT-Yeah.  AT-I got this.  Don't worry.  What the fuck...how Phil say he's gonna rent a house out to John Noble?  RT-I told him he can't do that.  I told him...Johnny got first dibs on that crib.  AT-That's right!  Same thing I said.  Alright I'll take care of it.** RT-Get the flood lights?  AT-Yep. **Todd's** doing them right now.  Don't worry.  I'll take care of it.  **RT-If you give me that number dude had for Phil I'll call him real quick.  I think it's 614-649-7011.**  The one he gave me this morning.  AT-Hold on.  RT-I didn't put it in the phone.  AT-I'm about to run over there.  RT-Just call him and get more real quick.  AT-Ok.  Hold on. *Andrea can be heard on the phone asking for phil's number.*  AT-Phil's not there.  Call him and get the number and call me back.  RT-I told you to call him.  Why would you call Johnny instead of calling yourself?  AT-I'm sorry...yep. *Andrea gets a text message.*  RT-He prolly just texted you.  AT-**614-649-1174**.  RT-Alright. |

| 1/31/2017 | 614-649-1174 | 2105 | **Phil Lawson** | RT-Whaddup?  PL-What's up **Bubba**?  Where they got you at?  RT-Going to the workhouse later.  What you got going on?  PL-Moving all day.  Salty you can't come check me out though.  I promise you erything's gonna be alright.  RT-Talk to Andrea yet?  **PL-No, Johnny called me and got the number.  I lost it. Listen.  I'm gonna put in all this work man.  Promise you ain't gonna quit.  RT-As long as you ain't gonna let this nigga talk you into no bullshit.  PL-Listen...I don't over trust dude.  I got all these fiends around and he'll make sure they ain't clipping nothing.  I'm not gonna give him no authority.  I'm responsible for erything.  Trust me ok?  RT-Ok. PL-I'm asking you as my best friend.  I'm not going to give him anything and if anything ever fucks up I'm responsible for that.  He's been helping me out at night...Nate's always like, let me help!.  NOBLE's in there and nothing's coming up short.  He watches people and writes shit down.  I don't want you to take no L's (drug slang for losses).  You can't take no losses.  I give you my word on our friendship.  I'm not going to let this fall apart.  RT-Don't work out of 130 (130 S. Warren Ave.) bro.  PL-The only thing I said about that was I was moving and Bro said no.  I'm not ever going to go against you.  Ever.  Please believe that.  RT-You're all I got man.  PL-I'm really sad but at least I can be here to help you.  Erything I got is because of you.  I'm not gonna let you down.  I promise you that.  I'm gonna grind my ass off bro and we're gonna start this business.**  RT-They told me man if I ever go fed I'm gonna get a life bid.  They told my lawyer that today.  **PL-As soon as we save up enough to buy the trailers and pay your house off let's quit and start the business up.**  Don't even talk like that. |
| | | | | **PL-You do bad things for good reasons man.  Erybody depends on you.**  Fuck. I'm fucked up over this.  Tryna be strong.  **I will give her that 3 grand.**  I'll chip in for your food boxes...anything you need.  RT-Call her and check on her bro.  **She got the number to that little black phone.**  PL-Please trust me.  I'm reliable with erything.  RT-I know bro. |
| 2/1/2017 | 614-966-0275 | 905 | **Andrea Tinsley** | **AT-Erything's going smooth.**  He called me after you talked to him though. |

| 2/1/2017 | 614-966-0275 | 928 | **Andrea Tinsley** | RT-My watch and my cuban link is in my sock drawer.  Take them out and put them up.  AT-OK. I got the blinds up in the kitchen and all the wire ran for the lights.  All the locks are changed.  RT-Them doors need to stay locked.  AT-Ok. All the doors take the same key too.  Top and bottom.  I got **Todd** fixing the slider so it locks **Reggie** out at night time.  I just need to make sure **Phil's doing what he spose to be doing and I'll feel a little better.  RT-You need me to make sure?  AT-Yeah.**  RT-I need that number again for him...649-1174?  **AT-Yep. And I need to put some money on Johnny's phone so you can call and talk to him so Phil ain't just telling you what you want to hear.**  RT-I don't want to deal with that stress man.  AT-I know you don't.  I'm sorry.  RT-I'll deal with that shit when I touch down.  AT-Ok.  Phil said he wanted to come see you. RT-Let him come see me Saturday.  We need to talk. AT-Ok.  That's fine. Your shoe dude texted you.  He asked if you were ready.  RT-He's got some *inaudible* for me.  AT-Ok.  I'll text him back.  RT-That other phone...there's this lady from KC's that will call because some new shoes are coming out this weekend.  AT-Ok.  I'm on top of shit.  *AT and RT talk about what new Nike tennis shoes are coming out.*  RT- |

| 2/1/2017 | 614-649-1174 | 951 | Phil Lawson | **PL-Whaddup? RT-Nothing. PL-We're over here on Richardson (Richardson Ave. on "Hilltop").** Franky said what's up. Crystal said she loves you. RT-Tell them I said what's up. **PL-Kat's giving me the 100 to give to Andrea.** RT-Alright. *PL calls RT "Bubby".* PL-That faggot ass Groucho went down for selling fake pills and there's no record of it. I'm shutting down my smart phone today. There's no reason to have it. You need anything? I'll make sure you get some flicks and a clothes box when you get there. **Hopefully this crib is good (Richardson) for a daytime spot (Trap House). RT-Just run them through the back (Backdoor). PL-For sure. We'll just make Shelly leave cause she tried to come up to the front. Told her to call back. Hopefully it does good today. RT-Hey did it burst? PL-Hell yeah. Franky said it slapped lastnight. PL-Anything else you need me to do for you?** RT-No. I'm good. PL-Nike went to jail. He got 90 days. RT-I seen him. PL-He went there in sweatpants and fired his lawyer. RT-I heard them call him...David *inaudible* Husband (?). PL-If he gets out we shouldn't fuck with him. RT-Yeah. **You ain't sick or nothing from touching that shit? RT-A little bit. PL-You prolly have a headache for a couple days. RT-Yeah. PL-Prolly be sick for a couple days. PL-This place (Richardson Ave.) is smooth for the daytime. Ima put together erything I can for 18 months...stack, stack, stack...you ain't gonna have to do nothing.** I'm gonna get these trailers up...especially if I can get them hot. Pay a driver to drive them around... RT-Hell yeah. PL-You know your wifey gonna hold you down. She already proved that. RT-I'm mentally prepared. PL-I think Dynasty (dog) is pregnant. I had to break them up in the pen the other day. |
| 2/1/2017 | 614-966-0275 | 1011 | Andrea Tinsley | **RT-I talked to Phill. Erything going good. He's over on Richardson. AT-I know. I just talked to him.** I'm just here under the covers. It's raining here. |

| 2/1/2017 | 614-966-0275 | 1046 | **Andrea Tinsley** | RT-They said it slapped last night. AT-Yep. I got that 12 dollars for that money order (S/A Burns reviewed Chase Bank records and Andrea TINSLEY made a withdrawal of $12,000 for payment on the 7187 Lithopolis Rd. property on this date). RT-Sweet. That's awesome. AT-Yep. RT-You already put the money in the bank and shit? AT-I haven't yet. I put some of that in there. I gotta go do all that today. RT-I only got a year and 3 months. AT-I texted Dave and he said we can file for early release in 12 months. **Reggie** and **Todd** said they were gonna have your man cave done by the time you come home. RT-That's what's up. AT-Yep. They got something to prove. **RT-I talked to Phil. AT-He keeps trying to reassure me but I have that gut feeling. Johnny has been on point making sure I feel good.** He told me I can call him anytime for anything. RT-That's cool. **AT-As long as erything goes smooth we'll be alright. RT-Put some money on my mom's phone. AT-Ok.** |
| --- | --- | --- | --- | --- |
| 2/1/2017 | 614-966-0275 | 1209 | **Andrea Tinsley** | RT-I need you to have you put some money on my dude Ricky's books when I get down to CRC. He can give me food. AT-Promise me when you get home we can go do more things. We ain't gotta spend no money. We can go fishin…all we need to buy is bait and snacks. RT-I promise. |
| 2/1/2017 | 614-649-1174 | 1232 | **Phil Lawson** | PL-Whaddup **Bubba**? RT-Not shit. We got our commissary taken. PL-I hate that place. RT-Yep. **PL-They're talking about Lisa being posted up at Lazar. Beavis (NOBLE) said he thinks she's posted up with DT.** RT-Somebody better go over there and flip the fuck out. **PL-I need to make sure it's 100 before that but yeah…I'll figure it out. But yeah…we're not going. Uncle Rodney's grabbing a twofers but whatever they got going we're going to shut it down. Ain't no room for that.** RT-How they fuckin with DT if Uncle Rodney's coming to holler at you? PL-That's what D said…I'm going to look into it. D said she's over there posted up. I'll get the facts straightened out. Whatever they tryna do won't last anyways. **RT-It been slappin? PL-It's been steady. I got Franky over here watching me. It's been steady.** |

91. On or about April 2, 2019, S/A Burns interviewed a Cooperating Defendant (CD #2) in regards to the TINSLEY DTO. CD #2 stated in October 2018, the CD started assisting

Jonathan NOBLE with trafficking drugs at **Trap House #5**. CD #2 advised Holley LNU owned the trailer, and that Terri EBERT and Timi SPAFFORD arranged for the location to be used by the DTO.

92. On this same date, CD #2 was asked about the main narcotics supplier. CD #2 stated Robert TINSLEY was the supplier of heroin and crack cocaine. CD #2 stated Ronald GALLAUGER, aka "Reggie," would bring the narcotics to the locations used to sell the narcotics (Trap Houses). CD #2 stated GALLAUGHER would bring an ounce at a time, and depending on the day, he would come to the trap house 1 -3 times a day or more. CD #2 stated GALLAUGHER would leave with the money, and was driving a Ford Mustang (registered to Andrea TINSLEY). CD #2 stated Robert TINSLEY would "pop in" at the locations, but would not carry any of the narcotics. CD #2 stated Robert TINSLEY drives a Chevy Silverado pickup truck. CD #2 stated the heroin and crack cocaine came to the "trap house" ready to sell. Your affiant asked CD #2 about contact with Andrea TINSLEY. CD #2 stated she called the trap house one day when Todd GALLAUGHER was stopped by the police leaving the trap house. CD #2 advised Andrea TINSLEY stated someone was "snitching" and they needed to find out who it was and cut them off (sell no drugs to them).

93. On this same date, your affiant showed CD #2 photographs of different trap houses used by the DTO:

- **Trap House #6:** CD #2 stated Chris LNU and Edna LNU were living at this residence and they were friends of Robert TINSLEY. Your affiant asked about the rear door. CD #2 stated purchasers were instructed to come to the back door.

- **Trap House #7:** CD #2 stated an older Unknown Male, who was a drug user used to have this location, and that the apartment was used to sell drugs.

- **Trap House #8:** CD #2 stated Tyler LNU and his mother lived at this location.

- **Trap House #9:** CD #2 stated a girl named Christina LNU lived at this location.

94. On this same date, CD #2 was asked about Robert TINSLEY carrying a firearm. CD #2 stated he/she has not seen TINSLEY with a firearm. CD #2 stated TINSLEY would go to the gun range and rent guns to shoot.

95. On this same date, your affiant showed CD #2 a photograph of Ronald GALLAUGER II. CD #2 identified the photograph as "Reggie." CD #2 advised that Reggie lives at Robert and Andrea TINSLEY's house, in a barn (**7187 Lithopolis Rd., Groveport, OH**).

96. On this same date, your affiant showed CD #2 a photograph of Todd GALLAUGHER. CD #2 identified the photograph as "Todd." CD #2 stated Todd GALLAUGHER lives at his mom and dad's house.

97. On this same date, your affiant showed CD #2 a photograph of Phil LAWSON. CD #2 identified the photograph as "Phil." The CD stated that LAWSON sold narcotics for TINSLEY.

98. On or about April 4, 2019, S/A Burns conducted surveillance at **7187 Lithopolis Rd., Groveport, OH**. S/A Burns observed several barns and outbuildings, to include, a large camper. S/A Burns has received information from multiple sources that Ronald GALLAUGHER II, aka "Reggie," lives with the TINSLEY's on the property. Andrea TINSLEY is listed as the owner of the property. The transfer price was listed as $344,800, and a transfer date of 9/07/2018. The above purchase by the TINSLEY's are not consistent with their legitimate income as reported for tax purposes.

99. On or about this same date, S/A Burns conducted surveillance at **4042 Walnut Crossing Dr., Groveport, OH**. This address is listed on Andrea TINSLEY's Ohio Driver's License, issued on 5/22/2015. S/A Burns observed a purple Ford parked in the driveway, bearing Ohio Tag: EYK-6363. S/A Burns determined that this vehicle was registered to Sherry E. Breakfield, with a listed address of 4048 Walnut Crossing Dr., Groveport, OH.

100. On or about this same date, S/A Burns and TFO Orick met with CD #1 in regards to Robert TINSLEY. S/A Burns asked the CD if TINSLEY sold ounces of Crack and/or Heroin. CD #1 stated that ounces were sold for $1,200.00 per ounce, 28 grams of crack cocaine or 25 grams of heroin. CD #1 stated that "Reggie" (Ronald GALLAUGHER) would deliver the ounce quantities, and $1,200.00 per ounce went back to TINSLEY.

101. On or about this same date, S/A Burns asked the CD if Phil LAWSON had a "trap house" on Richardson Ave. in 2017. CD #1 stated that LAWSON was selling at a trap house on Richardson Ave., and that it was a tan house near W. Broad Street. S/A Burns asked the CD if LAWSON would instruct customers to use the rear door. CD #1 stated "always." CD #1 stated if the location had a rear door, customers were always told to go to the back door. S/A Burns asked who was supplying LAWSON at Richardson Ave. CD #1 stated that Andrea TINSLEY would have Ronald GALLAUGHER, bring the narcotics to LAWSON's spot on Richardson Ave. At this time, S/A Burns ended the interview with CD #1.

102. On or about April 6, 2019, CPD Officers initiated a traffic stop on Robert TINSLEY at Palmetto St. and Clarendon Ave., Columbus, OH, an area on the west-side of Columbus. TINSLEY was driving a Chevy Silverado, Ohio Tag: GNQ-4984, registered to Andrea TINSLEY, **4042 Walnut Crossing Dr., Groveport, OH**. Officers called for a K9, which responded and alerted on the vehicle. TINSLEY stated that he had smoked marijuana vape pens in the vehicle, which was probably the cause of the K9 alert. Officers searched the vehicle, and no narcotics or firearms were located inside the vehicle. TINSLEY stated he and his family moved to 635 Wilson Ave., Columbus, OH, and that he was working at Jiffy Lube located at Livingston Ave. and Fairwood Ave., Columbus, OH. Officers issued TINSLEY a traffic citation, and released him from the scene.

103. On or about April 15, 2019, a property assessment was conducted on the real property located **7187 Lithopolis Rd. Groveport, OH**. The results reflect that Andrea TINSLEY is

the owner of record. The property was transferred to her on or about 9/04/2018, there is no mortgage of record on the property, and the estimated assessor's value of the property is $280,600.

104. On or about May 9, 2019, S/A Burns had telephone contact with CD #1 in regards to Robert TINSLEY's DTO. CD #1 stated that she/he received information that an individual named "Frankie U" was distributing TINSLEY's narcotics to a small group of individuals, and that this individual was transporting the drugs by car, and that the TINSLEY DTO is not using a "Trap House" to distribute narcotics. CD #1 stated that she/he believed that "Frankie U" was Frank NEW, was from the south-side of Columbus, and a long-time associate of TINSLEY. CD #1 stated that she/he was recently on Lithopolis Rd., and that CD #1 observed both Robert TINSLEY's Chevy pickup and Andrea TINSLEY's SUV parked at their residence (**7187 Lithopolis Rd., Groveport, OH**).

105. On or about this same date, S/A Burns conducted an OHLEG search on Frank NEW. Frank James NEW is further described as a Male/White, 5'7", 165 lbs., Blond Hair, Hazel Eyes, DOB: 12/8/1983, FBI #: 967869LC0, and has a listed address of 165 Frebis Ave., Columbus, OH 43206 (South-side). A computerized criminal history (CCH) check revealed that NEW has arrests for Assault, DV, Possession of Cocaine, Possession of Heroin, and Felony Probation Violation. NEW was convicted in Franklin County Case #: 16-CR-6015 of Attempted Possession of Drugs, F-3.

106. On or about this same date, S/A Burns conducted a search on Robert TINSLEY's Facebook Page. S/A Burns found a Facebook account for Frank NEW while conducting a search of TINSLEY's "Friends." Photographs on NEW's Facebook page matched his Ohio Driver's License photograph from OHLEG. S/A Burns conducted a search of NEW's Facebook page and observed several individuals in NEW's list of "Friends" associated with the DTO , to include, Bill (William) DAVIS, Jonathan NOBLE, Phil LAWSON, and Thomas DELANEY.

107. On or about May 2, 2019, according to OHLEG records, Andrea TINSLEY was issued a new Ohio Driver's License, expiring on 5/18/2023. The listed address for the license is **4042 Walnut Crossing Dr., Groveport, OH**.

108. On or about May 10, 2019, S/A Burns conducted surveillance at 2540 Home Rd., Grove City, OH, the home residence of Todd GALLAUGER and Ronald "Reggie" GALLAUGER. S/A Burns observed several vehicles parked in the driveway at 2540 Home Rd., to include, a dark in color Pontiac Grand Prix, bearing Ohio Tag: HRC-4950. S/A Burns also observed two (2) campers in the rear of the residence, inside a fenced in backyard. S/A Burns conducted an OHLEG search on the Pontiac Grand Prix, and determined that the vehicle is registered to Ronald E. GALLAUGHER, aka Reggie GALLAUGHER.

109. On or about May 22, 2019, S/A Burns received Customer Information Summary from Columbia Gas of Ohio, Inc. for **4042 Walnut Crossing Dr., Groveport, OH**. The Account was in the name of Andrea TINSLEY, with a current balance of $306.82.

Payment History dates back to December 2015. There were no records of service found for Robert TINSLEY. There were no records of service found for **7187 Lithopolis Rd., Groveport, OH**.

110.    On or about May 27, 2019, S/A Burns received Customer Information Summary from American Electric Power for **4042 Walnut Crossing Dr., Groveport, OH**. Account # 100-330-889-6 was in the name of Andrea TINSLEY, and the account started on 7/01/2014 and is currently active with a current bill balance of $82.23. There were no records of service found for Robert TINSLEY. There were no records of service found for **7187 Lithopolis Rd., Groveport, OH**.

111.    On or about October 29, 2019, S/A Burns and TFO Orick conducted a Proffer Interview with an ATF Cooperating Defendant (CD #3) in regards to narcotics traffickers on the west-side of Columbus. S/A Burns showed the CD #3 a photograph of Robert TINSLEY. CD #3 stated that the CD was in prison in Lancaster, OH with TINSLEY and could not remember his name. CD #3 stated that the CD does not mess with him but he heard he makes a lot of money from trafficking narcotics. CD #3 was shown a photograph of Phil LAWSON. CD #3 stated that the CD was in the halfway house with LAWSON, and that LAWSON was tight with TINSLEY. CD #3 was shown a photograph of Jonathan NOBLE. CD #3 stated that NOBLE sold drugs with LAWSON, and that they had a "trap house" on Warren Ave., Columbus, OH (130 S. Warren Ave., Columbus, OH).

112.    On or about November 21, 2019, S/A Burns conducted surveillance at **7187 Lithopolis Rd., Groveport, OH and 4042 Walnut Crossing Dr., Groveport, OH**, both residences associated with Andrea and Robert TINSLEY. At 7187 Lithopolis Rd., S/A Burns observed several barns and outbuildings, to include, a large camper. S/A Burns observed a black Chevy SUV, bearing Ohio Tag: HGL-1121, and a grey Chevy truck, bearing Ohio Tag: GNQ-4984. S/A Burns is familiar with these vehicles, both registered to Andrea TINSLEY. Robert TINSLEY is known to drive the grey Chevy pickup truck, and Andrea TINSLEY drives the black Chevy SUV.

113.    On this same date, S/A Burns conducted surveillance at **4042 Walnut Crossing Dr., Groveport, OH**. S/A Burns observed a Chevy HHR parked in the driveway, bearing Ohio Tag: EYK-6363. S/A Burns determined that this vehicle was registered to Sherry E. Breakfield, with a listed address of 4048 Walnut Crossing Dr., Groveport, OH. The residence located at 4048 Walnut Crossing Dr. is next door to **4042 Walnut Crossing Dr., Groveport, OH**.

114.    Beginning on or about December 5, 2019 and continuing to December 11, 2019, ATF Special Agent (S/A) Jason Burns monitored a fixed surveillance video at 4042 Walnut Crossing Drive, Groveport, OH, a known address used by Robert and Andrea TINSLEY. During the course of the investigation, S/A Burns has identified Robert TINSLEY's truck as a dark colored Chevy Silverado, Ohio Tag: GNQ-4984, registered to Andrea TINSLEY. S/A Burns observed TINLEY's truck at 4042 Walnut Crossing Drive during the following dates and times:

- On 12/6/19, at approx. 7:43 AM, Chevy Truck, later identified as TINSLEY's, arrives and parks in the driveway. At approx. 7:52 AM, Chevy Truck leaves the residence (At the residence for approx. 9 minutes);

- On 12/6/19, at approx. 3:30 PM, TINSLEY's Chevy Truck arrives at the residence. S/A Burns was able to identify the License Plate as GNQ-4984. At approx. 3:37 PM, TINSLEY's Chevy Truck leaves the residence (At the residence for approx. 7 minutes);

- On 12/9/19, at approx. 2:41 PM, TINSLEY's Chevy Truck arrives at the residence. At approx. 3:01 PM, TINSLEY's Chevy Truck leaves the residence (At the residence for approx. 20 minutes);

- On 12/10/19, at approx. 8:14 AM, TINSLEY's Chevy Truck arrives at the residence. At approx. 3:01 PM, TINSLEY's Chevy Truck leaves the residence (At the residence for approx. 9 minutes);

- On 12/10/19, at approx. 4:24 PM, TINSLEY's Chevy Truck arrives at the residence. At approx. 5:30 PM, TINSLEY's Chevy Truck leaves the residence (At the residence for approx. 1 hour and 6 minutes); and

- On 12/10/19, at approx. 7:44 PM, TINSLEY's Chevy Truck arrives at the residence. At approx. 8:43 PM, TINSLEY's Chevy Truck leaves the residence (At the residence for approx. 1 hour).

115. During the course of the fixed video surveillance, S/A Burns continued to observe the Chevy HHR parked in the driveway, registered to Sherry E. Breakfield, with a listed address of 4048 Walnut Crossing Dr. (next door).

116. On or about December 11, 2019, at approx. 7:00 AM, the fixed video surveillance was terminated.

117. On or about January 27, 2020, S/A Burns and ATF Financial Investigator R. Brewer interviewed CD #1 in Columbus, OH in regards to Shawn FORSYTHE and Robert TINSLEY. The CD advised that approx. one (1) month ago, the CD was in contact with an Associate. The CD stated that the Associate told the CD about meeting with FORSYTHE at a hotel on Roberts Rd. in Columbus, OH. The Associate stated to the CD that FORSYTHE was in possession of a large amount of "Fetti," aka Fentanyl, U.S. Currency, and a firearm. The Associate stated to the CD that there was approx. eight (8) ounces of Fentanyl and $30,000 in cash. The Associate stated to the CD that he/she considered trying to rob FORSYTHE of the Fentanyl and cash, but believed that FORSYTHE was supplied with the Fentanyl by TINSLEY, and did not want to steal from him.

118. S/A Burns is familiar with FORSYTHE, and has observed photographs on social media of FORSYTHE and TINSLEY together. Shawn Anthony FORSYTHE is further

described as a Male/White, 5'5", 215 lbs., Brown Hair, Hazel Eyes, DOB: 11/18/1980, FBI #: 242361LB7. FORSYTHE's listed address in 442 Derrer Rd., Columbus, OH 43204. FORSYTHE has multiple arrests including Aggravated Burglary, Drug Abuse, Possession of Drugs, Engaging in Pattern of Corrupt Activity, Trafficking in Drugs, and Weapons Under Disability. FORSYTHE has convictions in Franklin County to include Possession of Drugs and Trafficking in Drugs.

119.    On or about this same date, TFO Jerry Orick was contacted by investigators from Adult Parole Authority (APA) and Franklin County Sheriff's Office (FCSO) in regards to a Confidential Source (FCSO – CS #1) that had information on Robert TINSLEY and Shawn FORSYTHE. The FCSO – CS #1 provided investigators with information regarding narcotics traffickers operating on the west-side of Columbus, OH, to include TINSLEY and FORSYTHE. The investigators found the information to be credible and contacted TFO Orick.

120.    On or about January 31, 2020, S/A Burns and TFO Orick met with FCSO Det. Pollard and the FCSO – CS #1 in regards to TINSLEY's Drug Trafficking Organization (DTO). The FCSO – CS #1 advised that FCSO – CS #1 is a long-time associate of TINSLEY and FORSYTHE. FCSO – CS #1 advised that TINSLEY is also known as "Bro," and is currently trafficking in large amounts of black-tar heroin, crack cocaine, and "Fetti," aka Fentanyl. FCSO – CS #1 advised that FORSYTHE is currently working for TINSLEY, selling narcotics at multiple locations. S/A Burns asked FCSO – CS #1 if TINSLEY recently started selling Fentanyl. FCSO – CS #1 advised that selling Fentanyl is relatively new, and that it was always black-tar heroin and crack. FCSO – CS #1 stated that FCSO – CS #1 was at the Woodspring Suites hotel off Roberts Rd. (2305 N. Wilson Rd., Columbus, OH 43228) approx. one (1) month ago, and observed FORSYTHE in possession of a large amount of Fentanyl. The CS stated that the Fentanyl had a blue color to it, and that there was approx. six (6) ounces of Fentanyl.

121.    FCSO – CS #1 advised that TINSLEY has multiple people work for him, selling narcotics, and that Jon NOBLE used to work for TINSLEY, but his "spot" on Clarendon Ave. was hit by the police (**Trap House #1**, ATF search warrant 12/28/2018). FCSO – CS #1 stated that two (2) Woodspring Suites employees are assisting TINSLEY with selling drugs at the hotel. FCSO – CS #1 stated that one employee is a Female/White with reddish hair, and she meets with TINSLEY and transports drugs to the hotel. During the course of the investigation, S/A Burns has observed Timi SPAFFORD (**Trap House #5**) on social media wearing a Woodspring Suites uniform. S/A Burns showed FCSO – CS #1 a photograph of SPAFFORD, and FCSO – CS #1 identified SPAFFORD as the employee meeting with TINSLEY to transport narcotics.

122.    FCSO – CS #1 advised that an older Male/White, with glasses, named "Drew" also assisted in working at trap houses and selling narcotics. FCSO – CS #1 advised that FCSO – CS #1 has seen "Drew" at the hotel, and that "Drew" stays at a residence on 7th Street, off S. High St., Columbus, OH. FCSO – CS #1 stated that "Drew" drives a green pickup truck or a maroon SUV. During the course of the investigation, S/A Burns

identified Todd Andrew GREEN, aka Drew GREEN, as a member of the DTO who would assist NOBLE and Todd GALLAUGHER selling narcotics at various trap houses. S/A Burns showed FCSO – CS #1 a photograph of GREEN, and FCSO – CS #1 identified GREEN as "Drew."

123.    FCSO – CS #1 stated that TINSLEY has been a large-scale narcotics trafficker for a long time and will operate from several locations. FCSO – CS #1 stated that there are always firearms at every location. S/A Burns asked FCSO – CS #1 what FCSO – CS #1 purchased from the TINSLEY DTO. FCSO – CS #1 stated FCSO – CS #1 purchased heroin. S/A Burns asked FCSO – CS #1 if FCSO – CS #1 was instructed to use the rear door at various trap houses. FCSO – CS #1 stated FCSO – CS #1 was always instructed to go to the back door. At this time, S/A Burns and TFO Orick ended the interview with FCSO – CS #1.

124.    On or about February 7, 2020, S/A Burns and TFO Orick met with a FCSO CS (FCSO - CS #2) in regards to Shawn FORSYTHE. FCSO - CS #2 advised that FCSO - CS #2 has known FORSYTHE for approx. one (1) year. FCSO - CS #2 advised that FORSYTHE is currently trafficking in large amounts of black-tar Heroin, Cocaine, and Fentanyl. FCSO - CS #2 advised that the cocaine is "cooked" into Crack Cocaine. FCSO - CS #2 stated that FORSYTHE sells narcotics at the hotel on Wilson Rd. and Roberts Rd., which was formally an Extended Stay (S/A Burns is familiar with this location which is currently a Woodspring Suites hotel). FCSO - CS #2 advised that FORSYTHE lives in a house on Derrer Rd., which has been identified by investigators as 442 Derrer Rd., Columbus, OH. FCSO - CS #2 advised that FORSYTHE drives a black Audi and a gold SUV.

125.    On or about this same date, TFO Orick and S/A Burns observed a black Audi parked in the driveway at 442 Derrer Rd., Columbus, OH.

126.    During the course of the investigation, TFO Orick was able to identify 297 Wrexham Ave. as a "Trap House" through information received from other CPD Patrol Officers and listing to recorded jail calls. TFO Orick determined the residence is being supplied by FORSYTHE, and that FORSYTHE pays the rent for his girlfriend Ashley TRIPPLETT to stay there. S/A Burns is familiar with TRIPPLETT and has spoken to her in the past about narcotics trafficking activity by the DTO, specifically involving Gary FROHAUER, who has a child with TRIPPLETT.

127.    On or about February 11, 2020, CPD Officer J. Bell #2900, was on patrol in marked Cruiser 195. Officer Bell observed a traffic violation and initiated a traffic stop on the suspect vehicle. Officer Bell made contact with the driver, who did not have a valid driver's license. Officer Bell inventoried the vehicle, and recovered drug paraphernalia from the driver side area. Officer Bell read the driver (CPD Bell – CS) their rights, and the CS agreed to speak to him.

128.    Officer Bell asked the CS how they knew the owner of the vehicle. The CS stated they were a close associate with the owner. Officer Bell was familiar with the owner of

the vehicle, and ask the CS if the CS was with the car owner when he was arrested with narcotics and a firearm, and the CS stated yes. Officer Bell asked the CS where the drugs came from, and the CS stated Shawn FORSYTHE. Officer Bell asked where they got the drugs, and the CS stated at the Woodspring Suites on N. Wilson Rd. The CS stated that FORSYTHE sells drugs out of there most of the time, and stays there with his girlfriend, identified by the CS as Ashley TRIPPLETT.

129.     Officer Bell asked the CS if the CS has been to FORSYTHE's house (442 Derrer Rd.), and the CS stated yes. Officer Bell asked if there were firearms inside the residence. The CS advised that FORSYTHE had numerous firearms inside the residence. Officer Bell asked the CS if she knew whom FORSYTHE sold drugs for, and the CS stated a tall, skinny, male black, that goes by "Bro" (TINSLEY). The CS stated the CS had never met him before, and the CS believes his first name is Robert. Officer Bell asked what FORSYTHE got from "Bro," and the CS stated everything, Tar (heroin), Crystal (meth), and Coke (cocaine). The CS stated that FORSYTHE has a trap house on Wrexham Ave., later identified as 297 Wrexham Ave. The CS advised that FORSYTHE's nephew, Cameron, runs the house on Wrexham Ave.

130.     While Officer Bell was on this traffic stop, CPD Officers made contact at 297 Wrexham Ave., where a car bearing Ohio Tag: HXZ-3653, registered to Matthew OVERMYER, was parked. OVERMYER had felony warrants for burglary, out of an incident at 442 Derrer Rd., Columbus, OH. Officers made contact with the occupants who stated they did not know who lived at the residence. Officers then started an investigation into a possibly burglary since no one knew who lived there. Officers took OVERMYER into custody. While clearing the residence officers observed Ashley TRIPPLET who also had a valid felony warrant for burglary out of the same incident, and was placed under arrest.

131.     The third occupant in the residence was identified as Nichole E. ADKINS, who stated that she was OVERMYER's girlfriend. Officer Bell responded to the residence and observed drug paraphernalia, including chore boy, syringes, scales covered in residue, and ripped baggies. Officer Bell and Officer Dorsey transported TRIPPLETT to CPD HQ ID Unit to be processed. While there, she stated that she did not understand what this was all over. She stated that it has to be her boyfriend's (FORSYTHE's) wife. TRIPPLETT stated that 442 Derrer Rd. was broken into the other day, and FORSTHE's wife must have said it was her (TRIPPLETT) who did it. TRIPPLETT stated that she stays at 297 Wrexham Ave. most of the time, but stays at hotels with her boyfriend (FORSYTHE) a lot too.

132.     On or about February 12, 2020, Officer J. Bell provided the above-mentioned information to TFO Orick via email in regards to a traffic stop and 297 Wrexham Ave. Your affiant is familiar with FORSYTHE and has received information from additional sources that he is being supplied narcotics by Robert TINSLEY, aka "Bro," and selling narcotics at the Woodspring Suites hotel at Roberts Rd. and Wilson Rd., Columbus, OH.

133.    On or about March 5, 2020, S/A Burns conducted surveillance at **7187 Lithopolis Rd., Groveport, OH**. /A Burns observed the black Chevy SUV, bearing Ohio Tag: HGL-1121, and the grey Chevy truck, bearing Ohio Tag: GNQ-4984, parked at the residence.

134.    Surveillance conducted on **7187 Lithopolis Rd.** revealed that Canal Winchester Middle School sits directly across the street from the residence. The school begins at approx. 7:45 AM. Based on surveillance done on the school grounds, the first school bus arrives at approx. 7:20 AM. Agents observed school personnel begin arriving at the school approx. an hour before the first bus, at approx. 6:20 AM. Surveillance was also conducted at **4042 Walnut Crossing Dr.**, which is located in a standard residential neighborhood. Your affiant observed children walking to bus stops at approx. 6:50 AM. Based on the above-mentioned surveillance, your affiant is requesting anytime/night-time search warrants to be issued in an effort to move up the time of operation from 6:00 AM to approx. 4:30 to 5:00 AM to give more than adequate time for enforcement teams to secure the residences prior to the time staff and students begin to arrive in the area.

## CONCLUSION

Through my experience and my discussions with other experienced law enforcement officers, I am familiar with the ways in which individuals involved with illegal activities who are laundering their illicit proceeds in an attempt to appear to have legitimate income conduct their business, and their methods of laundering the proceeds of their illegal activities. I am familiar with the methods, schemes, and operations used by those individuals involved with large-scale criminal activity and know:

a)  It is my experience that currency transactions that are conducted enable those individuals involved with large-scale criminal activity and money launderers to invest the cash proceeds of their illicit businesses into an asset, thereby legitimizing the currency.

b)  That those individuals involved with large scale criminal activity are known to trade items in their possession for items of monetary value such as firearms;

c)  That those individuals involved with large scale criminal activity conduct various transactions, including the purchase of vehicles and real estate, in order to create an appearance that their income is derived from legitimate sources.

d)  That those individuals involved with large scale criminal activity must maintain, on hand, large amounts of United States currency in order to maintain and finance their ongoing criminal enterprise;

e)  That those individuals involved with large scale criminal activity and money launderers maintain books, records, receipts, notes, ledgers, and other papers relating to the sale of narcotics, and the purchase of assets, including vehicles, real estate and other financial instruments;

f)  That the aforementioned books, records, receipts, notes, ledgers, etc., are commonly maintained where the individuals have ready access to them, i.e., homes, businesses, and automobiles.

g)  That it is common for those individuals involved with large scale criminal activity and money launderers to secrete proceeds of their criminal sales, and records of illicit

transactions, sources, and customers, in secure locations within their residences, businesses, garages, storage buildings, barns, trailers and safety deposit boxes for ready access, and also to conceal such items from law enforcement authorities;

h) That persons involved in such criminal activity and laundering conceal caches of currency, financial instruments, precious metals, jewelry, other items of value and/or proceeds of illicit transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in their criminal activities, in their residences, businesses, garages, storage buildings, barns, trailers, automobiles, and safety deposit boxes;

i) That those individuals involved with large scale criminal activity and money launderers commonly maintain addresses or telephone numbers in books, papers, pagers, or cellular phones (and often have multiple cellular phones and pagers) which reflect names, addresses, text messages to, and/or telephone numbers for their associates in the criminal organization, even if said items may be in code;

j) That those individuals involved with large scale criminal activity and money launderers frequently take, or cause to be taken, photographs of themselves, their associates, their property, and their product, and that these individuals usually maintain these photographs in their residences, businesses, and automobiles;

k) That when those individuals involved with large scale criminal activity and money launderers amass large monetary proceeds from the sale of their ill-gotten gains, they attempt to legitimize these profits by utilizing foreign and domestic banks and their attendant services, including securities, cashier's checks, money drafts, wire transfers, letters of credit, brokerage houses, real estate, shell corporations, business fronts, and other methods;

l) That those individuals involved with large scale criminal activity and money launderers sometimes store documents and records relating to their co-conspirators, customers, money, and assets on computer hardware and software, the contents of which frequently yield evidence of their criminal activity and money laundering crimes;

m) That courts have recognized that unexplained wealth is probative evidence of criminal activity in which transactions involving large amounts of cash and high profit margins are common, to include those individuals involved with large scale criminal activity;

n) That it is common for those individuals involved with large scale criminal activity and money launderers to conceal and store items related to their criminal activity and money laundering within safes, footlockers, boxes, containers and other hidden compartments, and within places that they own or over which they exercise control such as residences, businesses, and automobiles.

o) Individuals involved with large scale criminal activity store records of associated criminal acquisition/disposition documents at their residences, businesses, and/or in their vehicles;

In view of the above-mentioned facts and my training and experience in the investigation of financial crimes, I have probable cause to believe that contained within **7187 Lithopolis Rd., Groveport, OH** and **4042 Walnut Crossing Dr., Groveport, OH** is evidence of:

- Title 18 U.S.C. § 1956 (a)(1)(A)(I) – Laundering of monetary instruments with the intent to promote the carrying on of the specified unlawful activity;

- Title 18 U.S.C. § 1956 (a)(1)(B)(i) – Laundering of monetary instruments with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity;
- Title 18 U.S.C. § 1956 (h) – Conspiracy to promote the carrying on of the specified unlawful activity and to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity;
- Title 18 U.S.C. § 1957 – Engaging in monetary transactions in property derived from specified unlawful activity;
- Title 21 U.S.C. § 841(a) – Possess with Intent to Distribute a Controlled Substance; and
- Title 21 U.S.C. § 846 – Conspire to Possess with Intent to Distribute a Controlled Substance.

That Robert and Andrea TINSLEY are the current known residents of **7187 Lithopolis Rd., Groveport, OH** and **4042 Walnut Crossing Dr., Groveport, OH**.  Based upon the fact that paper records have been recovered from related search warrants, I believe that contained within the properties of **7187 Lithopolis Rd., Groveport, OH** and **4042 Walnut Crossing Dr., Groveport, OH** is evidence of those crimes.


Jason R. Burns
Special Agent, ATF


Sworn to and subscribed before me this ___ day of March 2020 in Columbus, Ohio.


Chelsey M. Vascura
U.S. MAGISTRATE JUDGE